In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3955

Cecil W. Watson,

Plaintiff-Appellant,

v.

William J. Henderson, Postmaster General
of the United States,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 7044--David H. Coar, Judge.

Argued April 19, 2000--Decided July 24, 2000

Before Posner, Chief Judge, and Coffey and
Easterbrook, Circuit Judges.

Easterbrook, Circuit Judge.  A decade ago Cecil
Watson applied for a managerial position at a
post office. He was turned down, and in 1993 the
Equal Employment Opportunity Commission concluded
that his race influenced the adverse decision.
The EEOC required the Postal Service to promote
Watson and restore salary and benefits lost
during the interim. (When the Postal Service is
the employer, the EEOC has the authority to make
decisions that become final unless contested by
the agency--and the Postal Service did not
contest the EEOC's position, so the EEOC's view
became the Postal Service's final agency
decision. See 42 U.S.C. sec.2000e-16(b); 29
C.F.R. sec.sec. 1614.109, 1614.110.) But the
Postal Service did not promote Watson. His
existing position as a supervisor of customer
services had been reclassified to pay grade EAS-16
before the EEOC issued its decision, and the
Postal Service concluded that this was just as
good as promoting him. It gave Watson back pay,
but only to the day when he began receiving pay
at the EAS-16 rate. He protested to the EEOC, which
initially found that he had received his due. But
after an administrative appeal the Commission
concluded that the record did not permit a
confident decision whether the positions of
Supervisor, Customer Services, and Manager,

Customer Services, are equivalent. It directed the Postal Service to address that question and, if the positions are not equivalent, to promote Watson and afford him "all benefits for make-whole relief (including, but not limited to, backpay and interest)." After the Postal Service informed Watson that it would do nothing further for him, he filed this civil action under sec.2000e-16(c), seeking enforcement of the 1993 decision. Whether sec.2000e-16(c) or the APA, 5 U.S.C. sec.706(1), is the right avenue for a dispute of this kind, see West v. Gibson, 527 U.S. 212, 219 (1999), is an issue that the parties have not addressed, and that we likewise bypass.

   After a bench trial, the district court concluded that the two positions are not equivalent--not only because one is higher than the other in the chain of command, but also because the duties and often the salaries differ. It directed the Postal Service to give Watson the next managerial EAS-17 job that becomes available in its Northern Illinois District, and to give Watson the benefits of an EAS-17 position until that promotion occurs. But the court declined to award Watson back pay, or to determine what other benefits (including, perhaps, promotion to EAS-18) Watson would have received had he been promoted in 1990, as he should have been. Accepting the Postal Service's argument, the district court concluded that all forms of relief other than promotion were forfeited when Watson's lawyer failed to file a timely brief in support of his appeal within the EEOC. Under the EEOC's regulations, "[a]ny statement or brief in support of the appeal must be submitted to the Director, Office of Federal Operations, and to the agency within 30 days of filing the appeal." 29 C.F.R. sec.1614.403(d). (Section 1614.403 has been rewritten, effective November 9, 1999, see 64 Fed. Reg. 37644, 37659 (July 12, 1999), but the change does not alter the substance of the quoted provision.) Watson filed his appeal on October 24, 1995, but did not submit a supporting statement until December 4, 1995. The Commission elected not to consider the untimely statement (or a second, wildly out-of-time statement received in April 1996). Because the EEOC disregarded Watson's statements, the district judge concluded, Watson has not exhausted his administrative remedies with respect to the issues discussed in the statements.

   On appeal, the Postal Service has confessed error on the subject of exhaustion. In evaluating this new position, we must distinguish two possibilities. First, it may be unnecessary for an appellant ever to present arguments on administrative appeal within the EEOC. That is to

say, "issue exhaustion" may be unnecessary, even though it is essential to file with the agency a charge that makes the basic claim of discrimination. The Supreme Court recently reached this conclusion with respect to the Appeals Council of the Social Security Administration, see Sims v. Apfel, 120 S. Ct. 2080 (2000), and because sec.1614.403(d) is an invitation rather than a command to file a statement, the EEOC may receive similar treatment. Second, it may be unimportant what the appellant files if the agency has addressed an issue. That is to say, an issue may be deemed exhausted if either presented to the EEOC in a statement or actually addressed by the agency. An issue neither presented in a statement nor decided by the agency would not be preserved for judicial review--although even then the agency's lawyers could forfeit the benefits of the private party's forfeiture, because an issue-exhaustion requirement is not jurisdictional. See Sims, 120 S. Ct. at 2083 n.1; Gibson v. West, 201 F.3d 990, 993-94 (7th Cir. 2000). (There is a third possibility--that because a federal employee may obtain de novo consideration under sec.2000e-16(c) without protesting to the EEOC about the employer's noncompliance, it does not matter what happened before the EEOC in 1995 and 1996. But perhaps an employee who chooses to complain within the bureaucracy must give the agency a reasonable opportunity to investigate and decide. We put this third possibility to one side, as the parties have not addressed it.)

We assumed in Gibson that an employee engaged in administrative adjudication must specifically identify each form of relief the employee seeks. Whether Sims justifies a different view is a difficult question. The Court relied on the fact that the Social Security Administration made optional a statement of grounds in support of an administrative appeal; sec.1614.403(d) also sounds optional. But all nine Justices also agreed that it is ordinarily essential to raise each issue before the agency, and Justice O'Connor, whose vote was essential to the majority in Sims, explained her position in a way suggesting that the Social Security Administration is unique. That agency invited appellants to include a statement of reasons within the request for review and provided only three lines for that purpose. According to the Social Security Administration, completing the form requires only 10 minutes. The tiny space and short time implied to Justice O'Connor that the Social Security Administration discourages appellants from providing reasons and thus must proceed without them. The EEOC, by contrast, gives appellants 30 days to file a separate statement in the nature of an appellate brief. It neither

discourages the filing of such statements nor implies that grounds will be short and easy to present. Section 1614.403(d) allows the agency to file a statement in reply. All of the Justices in the Sims majority deemed it important that the Appeals Council used inquisitorial rather than adversarial procedures. See also Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999) (anticipating the holding of Sims). The process the EEOC has adopted for claims against federal agencies looks more adversarial. Even after Sims, then, it remains a distinct possibility that failure to file a statement in support of an appeal to the EEOC forfeits all arguments--or at least that the EEOC may deem the omission a forfeiture if it chooses.

We need not decide what happens when the EEOC treats a subject as forfeited, or what happens when a line of argument is neither raised before nor addressed by that agency. For although the EEOC elected to disregard the two statements Watson filed, it did not say that his delay forfeited entitlement to any element of relief. On the contrary, the EEOC discussed back pay, found the record inadequate, and directed the Postal Service to address the issue anew and afford Watson "all benefits for make-whole relief (including, but not limited to, backpay and interest)." The EEOC also directed the Postal Service to determine "what EAS level [Watson] would now be assigned if he had not been wrongfully denied the position in 1990." Because the Postal Service agreed back in 1993 to his promotion with back pay and interest, Watson is entitled to judicial review of his contention that the Postal Service failed to implement that decision.

Watson seeks an additional form of relief: compensatory damages on account of the Postal Service's failure to implement the EEOC's decision, a failure that Watson describes as retaliation for his continued efforts to secure promotion and back pay. Here, however, Watson's forfeiture is complete. He did not present a retaliation claim to the EEOC. A second charge of discrimination was unnecessary, see McKenzie v. Illinois Department of Transportation, 92 F.3d 473, 482-83 (7th Cir. 1996); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989), but because the EEOC was the adjudicator as well as the investigator Watson had to alert it to his theory, yet did not. The Commission did not raise or adjudicate the subject on its own, did not conclude that Watson is the victim of retaliation, and did not order the Postal Service to provide any relief. Watson's claim of retaliation surfaced for the first time in the district court, which is too late.

The Postal Service contends that remand is unnecessary even with respect to back pay and the appropriate EAS grade, asserting that Watson has received full relief. Perhaps the record would support that conclusion, but the district court did not reach it. The only view the district judge announced on these subjects is that Watson had forfeited them. By directing the Postal Service to promote Watson to a manager's position as quickly as possible (and to increase his grade level to EAS-17 until the promotion occurs) the district judge implied that back pay, at least, may well have been appropriate had the request been preserved. Given our conclusion that the request has been preserved, the district judge must determine whether Watson is entitled to additional relief, and if so to what particular relief. Only after that decision has been made will it be appropriate to decide whether the record supports the judgment.

Reversed and Remanded