Regina McGUIRE, Plaintiff–Appellant,

v.

CITY OF SPRINGFIELD, ILLINOIS, Defendant–Appellee.

No. 01–1852.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 2002.

Decided Feb. 11, 2002.

James P. Baker (argued), Springfield, IL, for Regina McGuire.

Robert M. Rogers (argued), City of Springfield, Office of Corp. Counsel, Springfield, IL, for City of Springfield.

Before FLAUM, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Turned down in 1986 for a position as an "operator" in Springfield's Department of Public Utilities, Regina McGuire complained to the Illinois Department of Human Rights that she had been the victim of sex discrimination. After considering her claim for an entire decade (!), the IDHR entered an order in 1996 directing Springfield to place her in its training program for the operator's position, and to grant her back pay and seniority retroactive to 1987 if she completed the program successfully. The City put McGuire into the program as instructed, and she washed out in May 1998, at the end of an extended probationary period as Operator Trainee III. In this suit under Title VII of the Civil Rights Act of 1964, McGuire contends that this decision represents retaliation against the exercise of her right to complain to the IDHR, in violation of 42 U.S.C. § 2000e–3(a). The district court granted summary judgment in Springfield's favor. 133 F.Supp.2d 1095 (C.D.Ill.2001).

As the district judge saw things, McGuire's release from the training program in 1998 was too remote from her charge of discrimination in 1987 to allow an inference that the former was a response to the latter. Often we have observed that timing may offer a clue to causation (or its absence) when an employee charges retaliation: a short gap may suggest a causal link, while a long one undercuts an inference of causation. See *Lalvani v. Cook County*, 269 F.3d 785, 790–91 (7th Cir.2001); *Horwitz v. Board of Education*, 260 F.3d 602, 612–17 (7th Cir. 2001). Here the delay was exceedingly long. But the *reason* a long wait often implies no causation—that supervisors out to punish someone likely do so at an early opportunity after the event, while delay makes an intervening cause more likely— does not apply. Springfield removed McGuire from the training program at an early opportunity. Not the first; it could have dismissed her at stage I or II rather than allowing her to progress to Trainee III; but the dismissal still came before the end of the program. Passage of time was not necessarily a sign of forbearance; it does not signal that the employer remained satisfied with the employee's work despite the charge of discrimination. Instead the delay reflects molasses in the administrative process. Because the IDHR took a decade to issue its order, the City had no earlier opportunity to remove McGuire from the training program.

■ A causal link between the charge of discrimination and the employer's action need not demonstrate unlawful retaliation, however. Suppose that the IDHR had ordered Springfield to pay McGuire $100,000 in back pay in lieu of placing her in the training program, and that the City had done so. There would be a causal chain: charge leading to decision leading to payment. Yet the payment could not be labeled "retaliation" for the charge, kicking off another round of complaint. "Consequence" yes; "retaliation" no. An employer's action can be called "retaliation" only if it makes the employee worse off on account of the protected activity. Forking out $100,000 in damages does not make an employee worse off—even if the employee really wanted a larger award. To generalize, a series of events that an employee would pay to avoid might sensibly be called "retaliation," while a series of events that an employee would pay to enjoy cannot be deemed retaliatory. Cf. *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir.1987). McGuire would have paid for the opportunity to receive training (and the big back-pay award plus super-seniority at the end if she succeeded); she received wages during training and does not contend that she took a pay cut or gave up other valuable opportunities to participate. That she did not obtain all of the benefits she anticipated does not demonstrate retaliation. She remains better off than she was before she filed a charge of discrimination.

Another monetary example makes the point. Suppose once again that the IDHR had required Springfield to pay McGuire $100,000, but this time the City failed to do so, writing a check for $25,000 but refusing on account of a budget shortfall (or even dissatisfaction with the IDHR's decision) to pay the remainder. Could this be deemed "retaliation" for the original charge of discrimination and support a judgment under

§ 2000e–3(a)? We don't see how. McGuire would be better off than before (to the tune of $25,000); and if the City failed to carry out the IDHR's instructions, that would be a violation of the IDHR's order, not of federal law. Similarly, if the National Labor Relations Board orders an employer that has resisted unionization at every turn to bargain collectively with its workers, and the employer engages in surface bargaining that collapses without producing a collective bargaining agreement, this obstinacy could not be thought "retaliation" against the union for filing an unfair-labor-practice charge.

■ Failure to pay a judgment or comply with an injunction entered by a court or agency cannot usefully be called "retaliation for filing the complaint"; nor is slow payment or even nonpayment a separate violation of federal law. See *Evans v. Chicago*, 10 F.3d 474 (7th Cir.1993) (en banc). It is just a reason to enforce the judgment in supplemental proceedings. So too here. McGuire should have complained to the IDHR if she believed that the City had undermined the IDHR's order by dismissing her from the training program without adequate cause. At oral argument McGuire's lawyer said that he *had* complained to the IDHR and followed up with a suit in state court, which has stayed proceedings pending the outcome of the federal case. What counsel did not explain is why he split McGuire's theories in this fashion, exposing her to a defense of claim preclusion (res judicata) once the first case reaches judgment. See *Rogers v. Desiderio*, 58 F.3d 299 (7th Cir.1995); *Durgins v. East St. Louis*, 272 F.3d 841 (7th Cir. 2001). Her state-law theory could have been presented in federal court under the supplemental jurisdiction. But it was not, and there is no substantial federal claim. McGuire is a beneficiary of the IDHR's or-

der, and that the benefit could (or even should) have been greater does not amount to retaliation for initiating the proceedings.

AFFIRMED.